## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 03 B 40263 |
| | ) | Chapter 7 |
| MICHAEL J. RILEY, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| MISTY DILLON and HELEN | ) | Adv. No. 03 A 04838 |
| CUMMINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. RILEY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the amended complaint filed by Misty Dillon and Helen Cummins (collectively the "Plaintiffs" and individually "Misty" and "Helen") against Michael J. Riley (the "Debtor") which seeks to except a debt owed by the Debtor to the Plaintiffs from discharge pursuant to 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6). For the reasons set forth herein, the Court grants judgment in favor of the Debtor and finds that the debt is dischargeable.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

On October 1, 2003, the Debtor filed a voluntary Chapter 7 petition. On December 30, 2003, the Plaintiffs filed a single-count complaint wherein they allege that the debt owed them by the Debtor is non-dischargeable under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6). On August 2, 2004, the Court denied the Plaintiffs' motion for summary judgment. *Dillon v. Riley (In re Riley)*, Nos. 03 B 40263, 03 A 04838, 2004 WL 1729880 (Bankr. N.D. Ill. Aug. 2, 2004). Thereafter, on August 13, 2004, the Plaintiffs filed an amended complaint wherein they alleged three separate counts under § 523(a)(2), (a)(4) and (a)(6).

The Plaintiffs in this matter are mother and daughter, Helen and Misty, respectively. Helen is the sole legatee of her mother Kazue Tashiro ("Kazue"). Amend. Compl. at ¶ 2. Misty, Helen and Kazue met the Debtor in the late 1980s. *Id.* At that time, the Debtor was an agent for an insurance company from which Misty had purchased a health insurance policy. Thereafter, she purchased another policy, and over time, Misty and the Debtor became friends. In 1988, the Debtor advised Misty that he was transitioning out of the insurance business, and on August 31, 1988, the Debtor formed an Illinois corporation known as the Justin Lacey Financial Group, Inc. (the "JLFG"), an investment company. Pl. Ex. No. 1. The Debtor created the JLFG as a vehicle to invest in, among other things, an entity known as Controlled Release Technologies ("CRT"), a company that supposedly had promising patent rights for a disposable drug dispensing device. Ultimately, CRT was forced into bankruptcy. The JLFG was involuntarily dissolved on January 2, 1993. *Id.*

The basis of this action concerns the debt that arose from a number of transactions between the Debtor and Misty, Kazue and Helen. At the outset, the Court notes that the parties

-2-

dispute the nature of the funds: The Plaintiffs claim that the funds were an "investment" on their behalf, while the Debtor claims that the funds were "loans" that he was legally obligated to repay.[1] *See* Amend. Compl. at ¶ 6; Ans. to Amend. Compl. at ¶ 15.

The Plaintiffs allege that the Debtor represented to them that he was in the investment business and could invest their money at a substantial return. Amend. Compl. at ¶ 3. Specifically, the Plaintiffs allege that on November 1, 1988, Misty gave the Debtor $27,230.00. Pl. Closing at ¶ 27. In the Spring of 1989, the Debtor made similar representations to Kazue, and she invested $200,000.00 with him. *Id.* at ¶ 32. In June 1989, Kazue gave the Debtor an additional $36,587.61. *Id.* at ¶ 37. The Plaintiffs also state that the Debtor repaid to Kazue, or to Helen as Kazue's successor in interest the sum of $47,050.00. *Id.* at. ¶ 38.

The Court classifies the transactions at issue in this matter in three categories: (1) the initial investments; (2) the home purchase and sale; and (3) the loan. First, the Plaintiffs allege that the Debtor was to invest their money in the acquisition of four entities: (1) a bar in Elmhurst, Illinois, known as Riley's Gathering Place; (2) a limousine/car detailing service; (3) a summer

---

[1] For purposes of the instant matter, the Court does not need to make a finding that the transactions were either "investments" or "loans." The Debtor testified that the monies were loans to him to invest on his own behalf, and Misty testified that the Debtor was investing the funds on the Plaintiffs' behalf. In this case, such a finding is not outcome determinative. Neither party offered conclusive evidence proving the monies transacted were actually loans or investments, and the Court need not make that determination here. Apparently, none of the typical documentation such as promissory notes, stock certificates or the like were ever prepared to document any of the loans or investments. It is unnecessary to characterize them as debt or equity: The focus is on whether the Debtor's conduct falls within the proscriptions of the tortious acts and omissions as set forth in § 523(a)(2)(A), (a)(4) and (a)(6).

home in Apple Canyon in Galena, Illinois; and (4) vacant properties located near O'Hare Airport

(the "Four Entities").[2] *Id.* at ¶ 6.

The next transaction concerns the sale of the Debtor's brother's house ("Robert's

House"). In the Summer of 1989, the Debtor's brother, Robert Riley ("Robert"), died suddenly.

Trial Stip. at ¶ 15. The Debtor then obtained additional money from Misty and Helen in order

to purchase and resell Robert's House. Amend. Compl. at ¶ 6. Misty gave the Debtor

$10,000.00 and Kazue gave the Debtor $18,000.00 for this purchase, and the Plaintiffs allege that

the Debtor never paid Misty or Kazue any amounts pertaining to the sale of Robert's House. Pl.

Closing at ¶¶ 41, 43. The Debtor, on the other hand, contends that these amounts were repaid.

Ans. to Amend. Compl. at ¶ 6.

The third transaction involves the $25,000.00 loan the Debtor asked Misty to make him

in the Spring of 1991. The parties agree that this money was intended to be a loan. Pl. Closing

at ¶ 54; Pl. Ex. No. 10.

In sum, from approximately April 1989 through the remainder of 1989, the Debtor

obtained from Kazue a total of $236,587.61. Amend. Compl. at ¶ 4. From November 1988

through April 1991, the Debtor obtained $72,230.00 from Misty. *Id.* at ¶ 5.

Additionally, the Plaintiffs allege that from 1990 through August 2000, the Debtor made

small payments to them that purportedly pertained to the investments that the Plaintiffs had with

him. Amend. Compl. at ¶ 10. The Plaintiffs contend that the Debtor breached his duty of loyalty

---

[2]   In the amended complaint, the Plaintiffs allege that there were initially ten
investments. However, at trial and in the Plaintiffs' trial memoranda, they argue that there
were only four initial investment entities. Because the Plaintiffs have not proffered evidence
regarding the six other entities, the Court will only refer to the Four Entities.

to them by misappropriating and/or mismanaging assets that the Plaintiffs and Kazue had invested. *Id.* at ¶ 11. Specifically, the Plaintiffs allege that the Debtor transferred some of the investments and failed to disclose such transfers; he fraudulently concealed that those investments were transferred; and he failed to account to the Plaintiffs for those investments. *Id.* at ¶¶ 18-20. They also contend that the Debtor intended to deceive them and that they justifiably relied on his misrepresentations to their detriment. *Id.* at ¶¶ 8, 9. The Plaintiffs maintain that they reposed in the Debtor confidence to honestly invest their finances and that the Debtor owed them a duty of undivided loyalty, and as such, a fiduciary relationship existed between the Debtor, the Plaintiffs and Kazue. *Id.* at ¶¶ 12, 13. Further, they state that the Debtor's failure to provide an accounting, repay them their investments and reveal his breach of fiduciary duties resulted in a fraud at law. *Id.* at ¶¶ 14-17. Moreover, the Plaintiffs allege that the Debtor's actions constitute fraud or defalcation while acting in a fiduciary capacity, and such actions were willful and malicious injury to the Plaintiffs. *Id.* at ¶¶ 22, 23.

The Plaintiffs further allege in their amended complaint that on May 28, 2003, they filed an action against the Debtor for an accounting, money damages and other relief in the state court. *Id.* at ¶ 24. According to the Plaintiffs, on August 15, 2003, a default judgment was entered on that complaint in favor of Misty in the sum of $127,982.48, which included prejudgment interest at the rate of five percent per annum, and in favor of Helen in the amount of $390,175.94, which also included prejudgment interest at the same rate. *Id.* The Plaintiffs conclude their amended complaint with an allegation that the Debtor's actions entitle them to a determination that the debt owed to them by the Debtor is not dischargeable under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6).

At trial, only Misty and the Debtor testified. Misty testified that over time, she and the Debtor became close platonic friends, to the point by which she confided in him about personal and family matters, and considered him to be her best friend. She also testified that during this time the Debtor advised her that he was starting up the JLFG. According to Misty's testimony, the Debtor asked her to invest in the JLFG and he represented to her that it was an investment company for which he was seeking investors for the Four Entities. She also stated that the Debtor represented to her that she would be a part owner in each of these businesses and get a share of their profits. She further testified that she invested through the Debtor in the JLFG. According to Misty, had she known that the Debtor would put the money into CRT, she would not have invested in such a high risk venture. Misty testified that at the time she invested funds with the Debtor, she had no indication that he was untruthful.

Misty testified that she understood the difference between investments and loans and reiterated that the Debtor had told her that the investments were for "safe" deals. She testified that the only true loan she made the Debtor was the April 1991 $25,000.00 loan, and that all the others in her mind were the investments to which she was entitled to a percentage of the profits. She further testified that the Debtor repaid her approximately $8,300.00.

The Debtor testified that he agreed with Misty as to the nature and extent of their relationship. He also testified that in 1988, he was transitioning from his business of insurance sales to become involved in the marketing of CRT. According to his testimony, he created the JLFG as an investment vehicle, but no stock was ever sold in the company. He testified that he handled receipts and disbursements that he received from friends and family, but no one ever invested in the JLFG.

-6-

The Debtor testified that in 1989, he was also involved in the development of the Four Entities. He also testified that in 1988 and 1989, he borrowed the subject sums from the Plaintiffs, but he did not make any representations as to the use of the funds being limited to only the Four Entities.

According to the Debtor, he asked the Plaintiffs for loans because he thought he was going to get a $3,000,000.00 disbursement from the venture capital funds that were supposed to be invested in CRT. He testified that he thought he could do this for his friends and family at a better rate of return than banks or certificate of deposit investments. Further, the Debtor testified that he felt he was personally liable for all the money the Plaintiffs gave him and was agreeable to paying 12% interest on most funds loaned to him. He stated that some of the loans were repaid and some were not because of the ultimate failure of CRT. He did not issue any promissory notes because he obtained loans on a handshake basis.

Additionally, the Debtor testified that he frequently discussed CRT with Misty and how its business and patent rights would work. He also testified that he gave Misty brochures on CRT's subject product. According to the Debtor, he discussed with Misty all of the ventures in which her money was placed. He testified that he obtained personal loans from Misty and Kazue and those funds went into the bar, the car detail/limousine service, and the home near Galena. He also testified that he had taken Misty to see the rental home, the bar and the detail service as a special friend, but not for her to inspect as one of her investments. The Debtor denied ever telling her that she owned a piece of each of them, and he denied that he ever told her that he was a venture capitalist. All he repeated was that he was working with venture capitalists regarding CRT. He further denied telling Misty that the money would only go into safe investments.

-7-

According to the Debtor's testimony, at all times he intended to repay all of the monies borrowed from the Plaintiffs, and he thought that other sources of revenue derived from the other ventures would ultimately pay out so that he could, in turn, repay the loans he obtained from the family. He stated that he told Misty that he had been expecting to be paid $3,000,000.00 for his involvement with CRT. His expected funds did not come through because the inventor would not agree to reverse split his stock in the firm. As a result, CRT failed and the Debtor lost not only his personal investments of more than $100,000.00, but also money he borrowed and put into CRT, which he estimated at more than $500,000.00.

The Debtor testified that he began making repayments to the Plaintiffs in 1990 and resumed payments in 1997 in a sporadic fashion. He testified that all the activities and businesses he invested in ultimately failed. He further testified that over the years he repaid the Plaintiffs approximately $90,000.00.

The Court has had the opportunity to consider the pleadings of the parties, as well as the demeanor, tone and attitude of the witnesses for both sides. The Court concludes that in this proceeding, both the Debtor and Misty were credible and tried to tell the truth from his or her own perspective. The discrepancies in their testimony are in part colored by their obvious bias in favor of their own case, as well as by the distinctions in an individual's perspective on a given set of circumstances. "The function of the Court in a bench trial such as this, where the Court acts as the fact finder, is to resolve conflicting evidence by determining the credibility of witnesses, the weight to be attached to their testimony, and the inferences to be drawn from the evidence." *Solow v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.)*, 180 B.R. 851, 863 (Bankr. N.D. Ill. 1995) (*citing S.T.S. Int'l, Ltd. v. Laurel Sea Transp., Ltd.*, 932 F.2d 437, 440

-8-

(5th Cir. 1991)). *See also Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir.

1985), *cert. denied*, 475 U.S. 1147 (1986). Overall, the Court finds the testimony of both

witnesses credible, with few exceptions to be discussed *infra*.

## III. DISCUSSION

### A. Exception to the Discharge of a Debt

The party seeking to establish an exception to the discharge of a debt bears the burden

of proof. *In re Harasymiw*, 895 F.2d 1170, 1172 (7th Cir. 1990); *Banner Oil Co. v. Bryson (In*

*re Bryson)*, 187 B.R. 939, 961 (Bankr. N.D. Ill. 1995). The United States Supreme Court has

held that the burden of proof required to establish an exception to discharge is a preponderance

of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also In re McFarland*, 84

F.3d 943, 946 (7th Cir.), *cert. denied*, 519 U.S. 931 (1996); *In re Thirtyacre*, 36 F.3d 697, 700

(7th Cir. 1994). Exceptions to discharge are to be construed strictly against a creditor and

liberally in favor of a debtor in order to further the policy of providing a debtor with a fresh start

in bankruptcy. *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *In re Reines*, 142 F.3d 970, 972-

73 (7th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999); *In re Scarlata*, 979 F.2d 521, 524 (7th Cir.

1992); *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). "The statute is narrowly construed so

as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start."

*Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

### B. 11 U.S.C. § 523(a)(2)(A)

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the

dischargeability of debts. Section 523(a)(2)(A) provides that:

-9-

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—
>
> . . . .
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A) (2005). Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud, false pretenses and a false representation. *Id.*; *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). A single test is applied to all three grounds even though the elements for each vary under common law. *Jairath*, 259 B.R. at 314.

In order to demonstrate a claim based on false pretenses or a false representation, a creditor must show that (1) the debtor made a false representation of fact; (2) the debtor (a) either knew the representation was false or made it with reckless disregard for its truth and (b) made the representation with an intent to deceive; and (3) the creditor justifiably relied on the false representation. *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004); *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 710 (Bankr. N.D. Ill. 2004). The determination of whether the debtor had the requisite intent is a factual question that must be resolved by a review of all of the relevant circumstances of a particular case. *Paul*, 266 B.R. at 694. Proof of intent to deceive is measured by a debtor's subjective intention at the time the representation was made. *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr. N.D. Ill. 1998). "An intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another to advance money to the debtor." *Green v.*

*Pawlinski (In re Pawlinski)*, 170 B.R. 380, 393 (Bankr. N.D. Ill. 2004). Where a person knowingly or recklessly made false representations that the person knew or should have known would induce another to act, the court may logically infer an intent to deceive. *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001).

### 1. False pretenses or false representation

In order to except false pretenses or a false representation from discharge under § 523(a)(2)(A), the Plaintiffs must establish the following elements: (1) the Debtor made a false representation of fact (2) which the Debtor either (a) knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) the Plaintiffs justifiably relied on the false representation. *Brzakala*, 305 B.R. at 710. To prevail on a § 523(a)(2)(A) complaint, all three elements must be established. *Ardisson*, 272 B.R. at 357. Failure to establish any one fact is outcome determinative. *Jairath*, 259 B.R. at 314.

First, the Court finds that the Plaintiffs have failed to meet their burden to establish the first element under § 523(a)(2)(A): The Court finds that the Plaintiffs have not demonstrated by a preponderance of the evidence that the Debtor obtained money through representations that the Debtor either knew to be false or made with such reckless disregard for the truth as to constitute a willful misrepresentation. "[W]hen a creditor entrusts the debtor with money to use for a specific purpose and the debtor has no intention of using it in that manner, a misrepresentation exists upon which [a] debt can be held non-dischargeable." *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356-57 (Bankr. N.D. Ill. 2004). "Representations or promises to do future actions do not qualify unless [a] debtor never intended to perform." *Pawlinski*, 170 B.R. at 393. "A promise to pay made with a *present intention* not to perform, however, will satisfy

the misrepresentation requirement." *Brzakala*, 305 B.R. at 711 (emphasis in original). "Misrepresentation of the type that makes a debt nondischargeable under § 523(a)(2)(A) can be shown through conduct, and does not require a spoken statement." *Paul*, 266 B.R. at 693.

In this case, the Court finds that at the time he made the representations, the Debtor intended to repay the Plaintiffs in the future, and also intended to use the money in the manners that he had discussed with the Plaintiffs. Both parties testified about the nature of the investments or loans made by the Plaintiffs to the Debtor, and both parties were credible witnesses. The Plaintiffs have not proffered any corroborating documentary or testimonial evidence in support of the proposition that the Debtor did not intend to use the money in the manners he represented or that he did not in fact so use the money. In addition, he did not make the representations with such reckless disregard for the truth as to constitute willful misrepresentations.

Misty testified that the Debtor used some of the funds for the investment in the Four Entities. With respect to the investment in Robert's House, the Debtor testified that Misty and Helen were repaid on their investment or loan. Although Misty testified that she did not receive a return on this investment, there were some payments made to Kazue, suggesting that she received a portion from the investment in Robert's House. As far as the $25,000.00 loan from Misty, both parties agree that it was intended to be a loan, and that the Debtor did repay a portion of that amount. Based on this evidence, the Court finds that the Debtor used the funds he obtained in the represented manner for purposes of § 523(a)(2)(A), and did not obtain those funds through false pretenses or false representations.

-12-

Further, there is nothing in the record to suggest that the Debtor acted in a way that would deliberately create and foster a false impression. The Court finds no false impression here. To the contrary, the Debtor not only invested his own funds, but also made partial repayments to the Plaintiffs, fulfilling a portion of his obligations to them, and demonstrating his intent to perform in accordance with his representations. The Debtor represented to the Plaintiffs that he would repay the money given to him, and the Court finds that he intended to do so. He hoped to make some money for himself and his friends, if possible. At the time he obtained the money from the Plaintiffs, he believed he would be able to perform on his promises. The Plaintiffs have proffered no supporting evidence to suggest that at the time he made the representations, the Debtor either knew they were false or so recklessly disregarded the truth to amount to a willful misrepresentation.

Second, the Court likewise finds that the Debtor possessed no fraudulent scienter when he obtained the money from the Plaintiffs. "Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made." *Monroe*, 304 B.R. at 356. "Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Jairath*, 259 B.R. at 315. Indeed, the first and second elements under § 523(a)(2)(Λ) are closely related. The Court finds that at the time the Debtor obtained the funds from the Plaintiffs, he believed that he could repay the money. Similarly, the Plaintiffs have proffered no evidence to suggest that the money was not actually invested in the Four Entities. As discussed, the Plaintiffs did receive some return on their investment: Kazue received $47,050.00 and Misty

-13-

received $8,300.00. This suggests the Debtor's intention to repay the Plaintiffs. The Court finds that the Debtor did not have the requisite mental state or intent to deceive the Plaintiffs.

Third, because the Plaintiffs have failed to establish the first two elements of § 523(a)(2)(A), the Court need not go into a detailed discussion of the third element. Reliance on a false pretense or false representation under § 523(a)(2)(A) must be "justifiable." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.* at 70-72. Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard. *Id.* at 71; *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). To satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir.), *cert. denied*, 516 U.S. 1008 (1995) ("Reliance means the conjunction of a material misrepresentation with causation in fact.").

"[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (*quoting Field v. Mans*, 516 U.S. at 74-85). Although the Court finds no false representation here, the Plaintiffs' reliance on the Debtor's representations was justifiable in light of the close, platonic friendship the Debtor had with Misty, as well as the aid and assistance the Debtor rendered to her various family members over

-14-

the years. The Plaintiffs' reliance on the Debtor's representations was to their detriment because they were deprived of the use and benefit of their money.

Therefore, while the situation in indeed unfortunate, it cannot be said that the Debtor obtained the funds from the Plaintiffs through false pretenses or false representations for purposes of § 523(a)(2)(A). The Court finds that the Debtor intended to and in fact invested the money for the Plaintiffs, but the investments simply did not work out. Thus, the Debtor could not repay all of the money plus interest as he promised. This is not grounds upon which to deny an unfortunate debtor his discharge. Here, the Court finds this Debtor was just that: unfortunate and unwise. He did not, however, obtain the money through any false pretenses or false representations, nor did he act with intent to deceive or defraud the Plaintiffs.

### 2. Actual fraud

The Seventh Circuit Court of Appeals has made it clear that misrepresentation and reliance thereon are not always required to establish fraud. *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000). Indeed, the Seventh Circuit recently defined the term "fraud":

> 'Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.'

*Id.* at 893 (*quoting Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla. 1952)). "Actual fraud" is not limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.* Hence, a different analysis must be utilized when a creditor alleges actual fraud. *Id.* The *McClellan* court

opined that because common law fraud does not always take the form of a misrepresentation, a creditor need not allege misrepresentation and reliance thereon to state a cause of action for actual fraud under § 523(a)(2)(A). *Id.* Rather, the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. *Id.* The fraud exception under § 523(a)(2)(A) does not reach constructive frauds, only actual ones. *Id.* at 894. "Though cases often say that exclusions from dischargeability should be narrowly construed, we have emphasized that they serve vital functions." *Id.* at 893 (*quoting Mayer*, 51 F.3d at 674). "Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment." *Id.* (*quoting Mayer*, 51 F.3d at 674).

In this case, the Plaintiffs allege in the amended complaint that the Debtor's "failure to disclose what he ought to disclose is fraud at law." Amend. Compl. at ¶ 17. However, the Plaintiffs have proffered no corroborating documentary or testimonial evidence to support that a fraud occurred, and the Court finds that there was no abuse of the Bankruptcy Code on the Debtor's part as contemplated by *McClellan*: The Plaintiffs have proffered no evidence to establish what "truth" was suppressed, and that such suppression was unfair to them. 217 F.3d at 893.

Misty testified that she did not learn of the existence of or the Debtor's involvement with CRT until the § 341 creditors' meeting, and she also testified that she invested through the Debtor in the JLFG, the Debtor's vehicle for investing in CRT. The Court finds her supposed unawareness of the existence of CRT highly suspect given the testimony offered by the Debtor and Misty with respect to the nature of the relationship between them. The Plaintiffs have not

-16-

pleaded that the Debtor's involvement in CRT was a suppressed truth for purposes of an actual fraud analysis under *McClellan*, and the Court does not find by a preponderance of the evidence that the Debtor suppressed the existence of CRT or his involvement therewith. Additionally, the Plaintiffs have put forth no evidence suggesting that the Debtor obtained the funds through surprise, trick, cunning, dissembling or by any other unfair means.

With respect to the Four Entities, Misty testified that the Debtor partially performed. With respect to the sale of Robert's House, the Debtor repaid a portion of that money to Kazuc. In addition, the Debtor repaid a portion of the $25,000.00 loan from Misty. The Court finds that the Plaintiffs have failed to establish that a fraud occurred because the Debtor followed through with what he had represented to the Plaintiffs. Therefore, the Court finds that the Debtor did not possess an intent to defraud the Plaintiffs. In addition, the subject debt of this dispute was not the result of fraud, but more likely the result of bad investment choices by both the Plaintiffs and the Debtor. The Debtor's mistaken belief that these business opportunities would be lucrative for himself and the Plaintiffs is not tantamount to fraud in this case. The Court finds that the Debtor did not intend to deceive the Plaintiffs, nor did he make any false representations for purposes of dischargeability under § 523(a)(2)(A).

## C. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4) (2005). The meaning of these terms is a question of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003). In order for the Plaintiffs to prevail under § 523(a)(4), they must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary;

in her eighties. The Court has taken these facts into consideration, and finds that here, such circumstances do not create a fiduciary relationship between Kazue and the Debtor.

Additionally, the Plaintiffs argue that the Debtor owed them a "duty of undivided, unselfish and unqualified loyalty." Amend. Compl. at ¶¶ 13. The Plaintiffs have failed to support the proposition that a duty of undivided, unselfish and unqualified loyalty equates to a fiduciary relationship under § 523(a)(4) as narrowly construed by *Marchiando*. The Court will not find that any such duty existed here. In sum, the Court finds that the relationship between the Plaintiffs and the Debtor did not constitute a fiduciary relationship.

## 2. <u>Defalcation</u>

"Defalcation" is not a defined term in the Bankruptcy Code. One court has defined defalcation within the context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr. N.D. Ill. 1996) (internal quotation omitted). *See also Blackhawk B.M.X., Inc. v. Anderson (In re Anderson)*, 64 B.R. 331, 334 (Bankr. N.D. Ill. 1986); *In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996). An objective standard is used to determine a defalcation, and intent or bad faith is not required. *See Pawlinski*, 170 B.R. at 389. The Seventh Circuit has adopted the position, like the Fifth and Sixth Circuits, that mere negligence does not constitute defalcation. *Meyer v. Rigdon*, 36 F.3d 1375, 1382-85 (7th Cir. 1994) (construing "defalcation" under § 523(a)(4) and § 523(a)(11)); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 255-57 (6th Cir. 1982) (Defalcation requires no intent but cannot rest on mere negligence.); *Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417, 421 (5th Cir. 1990) (Defalcation is "willful neglect of duty, even if not accompanied by fraud[.]").

The Seventh Circuit has not clearly defined the level of tortious conduct necessary to constitute a defalcation in the context of § 523(a)(4); it has only required something more than a negligent breach of a fiduciary duty. *Meyer*, 36 F.3d at 1385. Something more than mere negligence or mistake, but less than fraud, is required. *Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651, 656-57 (Bankr. N.D. Ill. 1998). Hence, some degree of culpability is required to make a debt non-dischargeable as a defalcation under § 523(a)(4). *See Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511-12 (2d Cir. 1937). A debtor's knowledge is relevant. *See Chase Lumber & Fuel Co. v. Koch (In re Koch)*, 197 B.R. 654, 658 (Bankr. W.D. Wis. 1996). To establish that a debt is non-dischargeable for reason of defalcation while acting in a fiduciary capacity, the Plaintiffs must establish, by a preponderance of the evidence, the existence of an express trust or fiduciary relation, and a debt caused by the Debtor's defalcation while acting as a fiduciary. *Grogan*, 498 U.S. at 291; *Woldman*, 92 F.3d at 547.

The Court finds that the Plaintiffs have not demonstrated by a preponderance of the evidence that the Debtor's actions constitute defalcation. The Plaintiffs failed to prove the existence of an express trust or a fiduciary duty as required under § 523(a)(4). Even if the Court were to find a fiduciary relationship existed here, based on the evidence presented, the Court cannot find that the Debtor committed defalcation. Rather, the Debtor used the funds in the manner he represented they would be used. As the Court has found, there was no express trust, the Debtor did not hold the funds given to him by the Plaintiffs in a fiduciary capacity, and he therefore did not misappropriate or fail to account for those funds in violation of any duty. Additionally, because the Debtor and the Plaintiffs were not in a fiduciary relationship, the Court finds that Debtor's actions were not tantamount to a defalcation.

·21·

In sum, the Court finds that the Plaintiffs have failed to prove by a preponderance of the

evidence that the debt owed to them by the Debtor is non-dischargeable under § 523(a)(4).

## D. 11 U.S.C. § 523(a)(6)

Finally, the Plaintiffs argue that the retention of their funds constitutes a willful and

malicious injury in violation of § 523(a)(6) of the Bankruptcy Code, which provides that:

> (a) A discharge under section 727 . . . of this title does not
> discharge an individual debtor from any debt–
>> (6) for willful and malicious injury by the debtor
>> to another entity or to the property of another
>> entity[.]

11 U.S.C. § 523(a)(6) (2005). In order to be entitled to a determination of non-dischargeability

under § 523(a)(6), the movant must prove three elements by a preponderance of the evidence:

(1) that the debtor intended to and caused an injury to the creditor's property interest; (2) that the

debtor's actions were willful; and (3) that the debtor's actions were malicious. *Baker Dev. Corp.*

*v. Mulder (In re Mulder)*, 307 B.R. 637, 641 (Bankr. N.D. Ill. 2004); *Ardisson*, 272 B.R. at 356;

*French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659, 662 (Bankr. N.D.

Ill. 1998), *aff'd*, No. 99 C 6020, 2000 WL 226706 (N.D. Ill. Feb. 22, 2000), *aff'd*, No. 00-1720,

2001 WL 1313652 (7th Cir. Oct. 23, 2001). "Since a person will rarely, if ever, admit to acting

in a willful and malicious manner, those requirements must be inferred from the circumstances

surrounding the injury at issue." *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723 (Bankr.

N.D. Ill. 2002).

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-

dischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act*

that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original).

Under *Geiger* and its more stringent standards, to satisfy the requirements of § 523(a)(6), the creditor must plead and prove that the debtor actually intended to harm it and not merely that the debtor acted intentionally and it was thus harmed. *Id.* at 61-62. In other words, the debtor must have intended the consequences of his act. *Id. See also Berkson v. Gulevsky (In re Gulevsky),* 362 F.3d 961, 964 (7th Cir. 2004). Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). *Geiger,* 523 U.S. at 64.

The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Recent decisions, however, have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required in *Geiger. See Su v. Carrillo (In re Su),* 259 B.R. 909, 913 (B.A.P. 9th Cir. 2001); *State of Tex. v. Walker,* 142 F.3d 813, 823 (5th Cir. 1998), *cert. denied,* 525 U.S. 1102 (1999); *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 463-65 (6th Cir. 1999); *Fidelity Fin. Servs. v. Cox (In re Cox),* 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000). Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury. *Lazzara,* 287 B.R. at 723.

An act is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse. . . ." *Thirtyacre,* 36 F.3d at 700. The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse. *Paul,* 266 B.R. at 696. A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious. *Thirtyacre,*

-23-

36 F.3d at 700. Whether an actor behaved willfully and maliciously is ultimately a question of fact reserved for the trier of fact. *Id.*

First, the Court finds that the Debtor did not act in a willful manner. As discussed, *supra,* the Court finds that the Debtor intended to repay the loans to the Plaintiffs, or give them a return on their investments. As Misty testified, the Debtor did follow through with the Four Entities, and he repaid $47,050.00 and $8,300.00 to Kazue and Misty, respectively. This suggests the Debtor had no intention of injuring the Plaintiffs when he obtained the money. The Debtor intended the act of obtaining the funds from the Plaintiffs, but did not intend the injury that resulted from his subsequent failure to repay them. Therefore, the Plaintiffs have not demonstrated by a preponderance of the evidence that the injury was intended or willful.

Further, the Plaintiffs have offered no evidence demonstrating that the Debtor committed a wrongful act that he intended to cause injury without excuse. In fact, the Debtor's intention was to repay the money to the Plaintiffs, with the hope of being able to repay the loans with interest, or give them a return on their investments. At the time he obtained the majority of the funds, he believed that he would be receiving a large sum from his investment in CRT. At that time, he was unaware that the investment would fail. The Court finds that the Debtor viewed Misty as a friend, and thought he could help her and her family make some money at a higher return than with other investments. This was his intention at the time he obtained the funds from the Plaintiffs. He did not act with any malicious intent. The Debtor had a cause and an explanation for each of these transactions, and a reason for his failure to fully perform: The investments failed. The Court finds that the Plaintiffs have not met their burden to satisfy the elements under § 523(a)(6).

-24-

A review of the evidence in this matter leads the Court to conclude that the Plaintiffs were clearly injured by the Debtor's conduct. They were deprived of the use of their money for many years. However, the Court finds that the Plaintiffs have failed to establish that the Debtor's actions were willful and malicious. Accordingly, the Court finds that the Plaintiffs have failed to prove by a preponderance of the evidence that the debt owed to them by the Debtor is non-dischargeable under § 523(a)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of the Debtor and finds that the debt owed by the Debtor to the Plaintiffs is dischargeable.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: ___5/31/5___

_____
John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Misty Dillon and Helen Cummins v. Michael J. Riley
**Adversary Case No. 04 A 04838**

Charles J. Myler, Esq.
Richard G. Larsen, Esq.
Myler, Ruddy & McTavish
111 West Downer, Suite 400
Aurora, IL 60506

Mark J. Unterberger, Esq.
Lurie & Unterberger, Ltd.
30 North LaSalle Street, Suite 2040
Chicago, IL 60602

Scott J. Kofkin, Esq.
Kofkin, Springer, Scheinbaum & Davis
611 South Addison Road
Addison, IL 60101

David E. Grochocinski, Esq.
Grochocinski, Grochocinski & Lloyd,
Ltd.
800 Ravinia Place
Orland Park, IL 60462

Ira Bodenstein, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606